# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

SIGNIFY NORTH AMERICA CORPORATION
and
SIGNIFY HOLDING B.V.

                   Plaintiffs,

        vs.

REGGIANI LIGHTING USA, INC.
and
REGGIANI S.P.A. ILLUMINAZIONE

              Defendants.

Civil Action No. 1:18-cv-11098-ER

**<u>ORAL ARGUMENT REQUESTED</u>**

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO
DISMISS DEFENDANTS' COUNTERCLAIMS AND STRIKE AFFIRMATIVE
<u>DEFENSES OF PATENT MISUSE AND INEQUITABLE CONDUCT</u>**

BOND, SCHOENECK & KING, PLLC

Jeremy P. Oczek (JO1975)
Sharon M. Porcellio (SP1020)
200 Delaware Avenue
Buffalo, New York 14202
Telephone: (716) 416-7000

George R. McGuire (GM0272)
Jonathan L. Gray (Admitted *pro hac vice*)
One Lincoln Center
Syracuse, New York 13202
Telephone: (315) 218-8500

*COUNSEL FOR PLAINTIFFS*
*Signify North America Corporation and*
*Signify Holding B.V.*

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

RELEVANT PROCEDURAL HISTORY ........................................................................... 2

LEGAL STANDARDS ........................................................................................................ 3

I.     Motion To Dismiss Under Fed. R. Civ. P. 12(b)(6). ............................................... 3

II.    Motion To Strike Under Rule 12(f). ...................................................................... 3

ARGUMENT ....................................................................................................................... 4

I.     Defendants' Inequitable Conduct Counterclaim Should Be Dismissed And The
Affirmative Defense Should Be Stricken For Failure To Plead With Particularity As
Required By Rule 9(b) And Federal Circuit Precedent. ...................................... 4

      A.    Legal Standard For Pleading Inequitable Conduct. ................................. 4

      B.    Defendants' Allegations Do Not State A Claim For Inequitable Conduct. ............ 7

            1.    The Allegations Fail To Particularize "Who" Deliberately Withheld
Material Information From The PTO With Intent To Deceive....................7

            2.    The Allegations Fail To Particularize "Why" The Allegedly Withheld
Information Is Material Or "How" A PTO Examiner Would Have Used
The Information To Assess Patentability....................................................10

            3.    The Allegations Fail To State The Requisite State Of Mind. ...................13

      C.    The Affirmative Defense Of Inequitable Conduct Should Be Stricken For The
Same Reasons. .................................................................................... 17

II.    Defendants' Patent Misuse Counterclaim Should Be Dismissed And The Affirmative
Defense Should Be Stricken For Failure to State a Claim................................. 18

      A.    Legal Standard For Pleading Patent Misuse. ....................................... 18

      B.    Defendants' Allegations Do Not State a Claim for Patent Misuse...................... 20

      C.    The Affirmative Defense For "Patent Misuse And Unclean Hands" Should Be
Stricken For The Same Reasons. ......................................................... 24

CONCLUSION.................................................................................................................... 25

**Cases**

*Abaxis, Inc. v. Cepheid*,
    2011 U.S. Dist. LEXIS 95589 (N.D. Cal. Aug. 25, 2011).......................................14

*Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*,
    2006 U.S. Dist. LEXIS 83823 (S.D.N.Y. Nov. 16, 2006)...............................20, 21

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)....................................................................................................3

*Audionics Sys. v. AAMP of Fla., Inc.*,
    2013 U.S. Dist. LEXIS 203021 (C.D. Cal. Nov. 19, 2013).....................................17

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................................................3

*Biro v. Conde Nast*,
    883 F. Supp. 2d 441 (S.D.N.Y. 2012)........................................................................3

*Burlington Industries, Inc. v. Dayco Corp.*,
    849 F.2d 1418 (Fed. Cir. 1988)..................................................................................4

*C.R. Bard, Inc. v. M3 Sys.*,
    157 F.3d 1340 (Fed. Cir. 1998).................................................................19, 20, 22

*California Motor Transp. Co. v. Trucking Unltd.*,
    404 U.S. 508 (1972)..................................................................................................20

*In re Certain LED Lighting Devices*,
    Inv. No. 337-TA-1081 (Feb. 20, 2018).......................................................................1

*In re Certain LED Lighting Devices*,
    Inv. No. 337-TA-1081 (Dec. 19, 2018) .....................................................................23

*Chamberlain Grp., Inc. v. Techtronic Indus. Co.*,
    2017 U.S. Dist. LEXIS 41095 (N.D. Ill. Mar. 22, 2017)....................................21, 24

*De Sesto v. Slaine*,
    171 F. Supp. 3d 194 (S.D.N.Y. 2016)......................................................................17

*Delano Farms Co. v. Cal. Table Grape Comm'n*,
    655 F.3d 1337 (Fed. Cir. 2011)................................................................................14

*Drew Techs. v. Robert Bosch, LLC*,
    2014 U.S. Dist. LEXIS 18256 (E.D. Mich. Feb. 13, 2014).....................................8, 9

*Edge Sys. Ltd. Liab. Co. v. Aguila,*
2015 U.S. Dist. LEXIS 144830 (S.D. Fla. Oct. 26, 2015) ................................................11, 15

*ESCO Corp. v. Cashman Equip. Co.,*
158 F. Supp. 3d 1051 (D. Nev. 2016) ...............................................................................21

*Everlight Elecs. Co. v. Nichia Corp.,*
907 F. Supp. 2d 866 (E.D. Mich. 2012) ..............................................................................8

*Exergen Corp. v. Wal-Mart Stores, Inc.,*
575 F.3d 1312 (Fed. Cir. 2009).....................................................3, 5, 6, 7, 8, 12, 13, 15, 16

*GEOMC Co. v. Calmare Therapeutics Inc.,*
918 F.3d 92 (2d Cir. 2019).................................................................................3, 4, 17, 24

*Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.,*
45 F.3d 1550 (Fed. Cir. 1995)......................................................................................19, 22

*Gust, Inc. v. AlphaCap Ventures, LLC,*
2016 U.S. Dist. LEXIS 98869 (S.D.N.Y. July 28, 2016) .....................................................20

*IMX, Inc. v. E-Loan, Inc.,*
748 F. Supp. 2d 1354 (S.D. Fla. 2010) .............................................................................22

*Int'l Audiotext Network v. AT&T Co.,*
62 F.3d 69 (2d Cir. 1995).................................................................................................10

*Int'l Test Sols., Inc. v. Mipox Int'l Corp.,*
2017 U.S. Dist. LEXIS 74640 (N.D. Cal. May 16, 2017) .....................................................12

*Invista N. Am. S.A.R.L. v. M&G USA Corp.,*
2013 U.S. Dist. LEXIS 77685 (D. Del. Apr. 30, 2013)...................................................14, 16

*Kranos IP Corp. v. Riddell, Inc.,*
334 F. Supp. 3d 907 (N.D. Ill. 2018) .................................................................................16

*Lerner v. Fleet Bank, N.A.,*
459 F.3d 273 (2d Cir. 2006)...............................................................................................6

*Lexington Luminance LLC v. Osram Sylvania Inc.,*
972 F. Supp. 2d 88 (D. Mass. 2013) .........................................................................11, 12, 14

*Medisim Ltd. v. BestMed LLC,*
910 F. Supp. 2d 591 (S.D.N.Y. 2012)............................................................................12, 13

*Mitsubishi Heavy Indus., LTD v. GE,*
2012 U.S. Dist. LEXIS 32314 (M.D. Fla. Mar. 12, 2012)...................................................8, 9

*Molins PLC v. Textron, Inc.*,
   48 F.3d 1172 (Fed. Cir. 1995)...................................................................6

*Multiform Desiccants, Inc. v. Medzam Ltd.*,
   133 F.3d 1473 (Fed. Cir. 1998)................................................................17

*Nalco Co. v. Turner Designs, Inc.*,
   2014 U.S. Dist. LEXIS 21362 (N.D. Cal. Feb. 19, 2014) ......................1

*Outside the Box Innovations, LLC v. Travel Caddy, Inc.*,
   695 F.3d 1285 (Fed. Cir. 2012)..................................................................4

*Pace Int'l, LLC v. Indus. Ventilation, Inc.*,
   2009 U.S. Dist. LEXIS 73847 (W.D. Wash. Aug. 6, 2009) ...................22

*Polaris Indus. v. Arctic Cat Inc.*,
   2015 U.S. Dist. LEXIS 102529 (D. Minn. Aug. 4, 2015) ......................14

*Princo Corp. v. ITC*,
   616 F.3d 1318 (Fed. Cir. 2010) (en banc).................................18, 23, 24

*Prowess, Inc. v. Raysearch Labs., AB*,
   953 F. Supp. 2d 638 (D. Md. 2013) ...........................................................6

*Research Corp. Techs. v. Microsoft Corp.*,
   536 F.3d 1247 (Fed. Cir. 2008).................................................................16

*Seaboard Int'l, Inc. v. Cameron Int'l Corp.*,
   2013 U.S. Dist. LEXIS 106784 (E.D. Cal. July 30, 2013) ....................23

*Specialty Minerals, Inc. v. Pluess-Staufer AG*,
   395 F. Supp. 2d 109 (S.D.N.Y. 2005).......................................................24

*Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*,
   537 F.3d 1357 (Fed. Cir. 2008)..................................................................6

*Takeda Chem. Indus. v. Alphapharm Pty., Ltd.*,
   2004 U.S. Dist. LEXIS 16584 (S.D.N.Y. Aug. 19, 2004) .....................23

*Therasense, Inc. v. Becton, Dickinson & Co.*,
   649 F.3d 1276 (Fed. Cir. 2011) (en banc).....................4, 5, 6, 7, 11, 14

*Va. Panel Corp. v. MAC Panel Co.*,
   133 F.3d 860 (Fed. Cir. 1997)....................................................18, 19, 22

*Vaughan Co. v. Glob. Bio-Fuels Tech., LLC*,
   2013 U.S. Dist. LEXIS 152068 (N.D.N.Y. Oct. 23, 2013) ...................15

*Warner Chilcott Co., LLC v. Amneal Pharm., LLC,*
    2013 U.S. Dist. LEXIS 177557 (D.N.J. Nov. 19, 2013)........................................................14

*Waters Indus. v. JJI Int'l, Inc.,*
    2012 U.S. Dist. LEXIS 168549 (N.D. Ill. Nov. 28, 2012)........................................................14

**Statutes**

35 U.S.C. § 102(b) ........................................................................................................................12

35 U.S.C. § 271(d) ......................................................................................................................1, 18

35 U.S.C. § 271(d)(2) ....................................................................................................................22

35 U.S.C. § 271(d)(3) ................................................................................................................20, 22

**Other Authorities**

Fed. R. Civ. P. 9(b) ...........................................................................................1, 3, 4, 5, 6, 9, 16, 17

Fed. R. Civ. P. 12(b)(6)....................................................................................................................3

Fed. R. Civ. P. 12(f).........................................................................................................................3

# INTRODUCTION

This Memorandum of Law is submitted in support of the Motion on behalf of Plaintiffs Signify North America Corporation and Signify Holding B.V. (collectively, "Signify") to (1) dismiss Defendants' counterclaim for patent misuse and strike the affirmative defense for patent misuse and unclean hands; and (2) dismiss Defendants' counterclaim for inequitable conduct and strike the affirmative defense of inequitable conduct (Dkt. 38).[1]

Despite their *third* attempt to state plausible allegations for inequitable conduct and patent misuse, Defendants have failed again:

1) As to inequitable conduct, although Defendants spill considerable ink in their latest amended pleading in attempt to bolster their inequitable conduct claim and defense, Defendants do not—and in fact cannot—point to any deliberate decision by any specific individual to withhold the allegedly material information during prosecution of the '138 and '559 Patents. Defendants' broad and unfounded allegations that "persons associated with the filing and prosecution of" these patent applications, including various named inventors "and/or" patent counsel, simply "should have known" that undisclosed information was but-for material to patentability are not enough to allege inequitable conduct with the particularity required under Rule 9(b).

2) As to patent misuse, Defendants' unfounded allegations that Signify instituted this patent action despite "knowing that the asserted patents are likely invalid and/or that Reggiani's products could not possibly infringe them" are not a proper basis for patent misuse. Moreover, Defendants have provided no particular facts for these allegations, and patent enforcement is specifically excluded from patent misuse under Section 271(d) of the Patent Act. Further, Defendants have failed to allege how Signify's patent action has impermissibly broadened the scope of any of the Patents-in-Suit with anticompetitive effect.

Allowing these counterclaims and defenses to remain in the case will subject Signify to vast, burdensome, and unnecessary discovery. Accordingly, Defendants' counterclaims and defenses of inequitable conduct and patent misuse should be dismissed.[2]

---

[1]   The Court held scheduled a pre-motion conference on May 9, 2019 and authorized Signify to file this Motion after Defendants had one last opportunity to file an amended pleading.

[2]   The International Trade Commission dismissed similarly deficient claims against Signify in *In re Certain LED Lighting Devices,* Inv. No. 337-TA-1081 (Feb. 20, 2018). A copy of the decision is attached as Exhibit A.

# RELEVANT PROCEDURAL HISTORY

Signify (formerly Philips Lighting) is the global market leader for lighting products with recognized expertise in the development, manufacturing, and application of innovative LED lighting solutions. (Am. Compl. ¶ 11, Dkt. 21.) Signify's LED lighting products have been installed and utilized throughout the world, including atop the Empire State Building.[3] To protect its intellectual property resulting from its significant investments, Signify has obtained numerous patents directed to various LED lighting devices and techniques. (*Id.* ¶ 12.) Signify filed the present patent infringement action on November 28, 2018 and filed an amended complaint on February 5, 2019, alleging that Defendants have infringed claims of U.S. Patent Nos. 7,348,604, 7,352,138, 7,766,518, 8,070,328, and 7,262,559 (collectively, the "Patents-in-Suit"). (Dkt. 21.)

Defendants were granted a nearly four-month extension of time to respond to the complaint until March 22, 2019. (Dkt. 18.) When Defendants responded, they asserted "unclean hands and/or patent misuse" as an affirmative defense and counterclaim. (Dkt. 25.) Signify filed a letter with the Court on April 12, 2019, indicating its intent to file a motion to dismiss this defense and counterclaim. (Dkt. 27.) Five days later, and despite having had nearly four months to investigate prior to filing its answer, Defendants filed an amended answer and counterclaims, in which they added fraud-based allegations of inequitable conduct with respect to the '138 and '559 Patents, made almost entirely on information and belief. (Dkt. 30.) In response to a pre-motion conference held with the Court on May 9, 2019, Defendants further amended their inequitable conduct and patent misuse claims and defenses, which are still insufficiently pled as is addressed in detail below. (Second Am. Answer ("SAA") at p. 21, 23-29, 39-47, Dkt. 38.)

---

[3]    *See* "A 'New' New York State of Mind: Empire State Building Redefines New York City Skyline With Philips LED Lighting," available at the following link: https://www.signify.com/en-us/our-company/news/press-release-archive/2012/20120509-empire-state-building.

# LEGAL STANDARDS

## I.    Motion To Dismiss Under Fed. R. Civ. P. 12(b)(6).

In considering a motion to dismiss under Rule 12(b)(6), the court must determine whether the pleading articulates sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Thus, "[w]hile legal conclusions can provide the framework of a [counterclaim], they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, (2009). To that end, "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 455 (S.D.N.Y. 2012) (quoting *Iqbal*, 129 S. Ct. at 1949)). As further described below, the Federal Circuit requires a claim for inequitable conduct to be pled with particularity in accordance with Rule 9(b). *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009).

## II.    Motion To Strike Under Rule 12(f).

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). To strike an affirmative defense, the Court must consider: (1) whether the affirmative defense is factually plausible; and (2) whether the affirmative defense is precluded as a matter of law. *See GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 98-99 (2d Cir. 2019). The Second Circuit recently clarified in *GEOMC* that "the plausibility standard of *Twombly* applies to determining the sufficiency of all pleadings, including the pleading of an affirmative defense, but with recognition that . . . applying the plausibility standard to any pleading is a 'context-specific' task." *Id.* at 98. The Second Circuit also reaffirmed in *GEOMC* that "an affirmative defense is improper and should be stricken if it is a legally insufficient basis for precluding a plaintiff from prevailing on its claims." *Id.* In deciding whether to strike a defense, the Court may consider whether the plaintiff

will be prejudiced by inclusion of such defense. *Id.* at 99 ("prejudice may be considered and, in some cases, may be determinative").

## ARGUMENT

I. **Defendants' Inequitable Conduct Counterclaim Should Be Dismissed And The Affirmative Defense Should Be Stricken For Failure To Plead With Particularity As Required By Rule 9(b) And Federal Circuit Precedent.**

A. **Legal Standard For Pleading Inequitable Conduct.**

While the defense of inequitable conduct may be useful to correct egregious instances of actual fraud on the Patent Office ("PTO"), the Federal Circuit has recognized that it has been over-pleaded and abused by defendants like Reggiani: "[T]he habit of charging inequitable conduct in almost every major patent case has become an absolute plague." *Burlington Industries, Inc. v. Dayco Corp.*, 849 F.2d 1418, 1422 (Fed. Cir. 1988).

"To establish unenforceability based on inequitable conduct in the PTO, it must be shown that information material to patentability was withheld from the PTO, or material misinformation was provided to the PTO, with the intent to deceive or mislead the patent examiner into granting the patent." *Outside the Box Innovations, LLC v. Travel Caddy, Inc.*, 695 F.3d 1285, 1290 (Fed. Cir. 2012) (citing *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290-92 (Fed. Cir. 2011) (en banc)). Inequitable conduct is a judicial doctrine that evolved from various Supreme Court cases that applied unclean hands to dismiss patent cases that "dealt with particularly egregious misconduct, including perjury, the manufacture of false evidence, and the suppression of evidence." *Therasense*, 649 F.3d at 1285, 1287.

Inequitable conduct must be proven by clear and convincing evidence showing that the patent applicant "misrepresented or omitted material information with the specific intent to deceive the PTO." *Id.* at 1287. To meet this standard, "the specific intent to deceive must be 'the

single most reasonable inference able to be drawn from the evidence.'" *Id.* at 1290 (quoting *Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008)).

Because inequitable conduct is a fraud-based claim, it must be pled with particularity under Rule 9(b). *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009). "Rule 9(b) requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Id.* at 1327. The pleading must also set forth the relevant state of mind for inequitable conduct, which requires the pleading to show: "(1) knowledge of the withheld material information or of the falsity of the material misrepresentation, and (2) specific intent to deceive the PTO." *Id.*

To satisfy the "who" requirement, the pleading must set forth "the specific individual . . . who both knew of the material information and deliberately withheld or misrepresented it." *Exergen*, 575 F.3d at 1329 (referring generally to "Exergen, its agents and/or attorneys" were insufficient). To plead the "what" and "where" of the material omission, the pleading must "identify which claims, and which limitations in those claims, the withheld references are relevant to, and where in those references the material information is found." *Id.* at 1329. The pleading must also explain "both 'why' the withheld information is material and not cumulative, and 'how' an examiner would have used this information in assessing the patentability of the claims." *Id.* at 1329-30. But-for materiality is required to establish inequitable conduct; "prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art." *Therasense*, 649 F.3d at 1291.

In addition to setting forth the who, what, when, where, and how of the material omission, the pleading must also "give rise to a reasonable inference of scienter, including both (1) knowledge of the withheld material information or of the falsity of the material

misrepresentation, and (2) specific intent to deceive the PTO." *Exergen*, 575 F.3d at 1330. "[A]lthough 'knowledge' and 'intent' may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Id.* at 1327; *see also Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (noting that Rule 9(b) requires a pleading to "allege facts that give rise to a strong inference of fraudulent intent").

To prevail on a claim for inequitable conduct, the accused infringer must show that "the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it."[4] *Therasense*, 649 F.3d at 1290; *see also Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1181 (Fed. Cir. 1995). A "finding that the misrepresentation or omission amounts to gross negligence or negligence under a 'should have known' standard does not satisfy this intent requirement." *Therasense*, 649 F.3d at 1290. In other words, "[p]roving that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive." *Id.* at 1290; *Exergen*, 575 F.3d at 1331 (allegations were insufficient where the circumstances alleged "d[id] not plausibly suggest any 'deliberate decision to withhold a known material reference'") (quoting *Molins*, 48 F.3d at 1181).

Moreover, the Federal Circuit has made clear that intent and materiality "are separate requirements." *Therasense*, 649 F.3d at 1290. Thus, "a district court may not infer intent solely from materiality." *Id.* at 1290; *see also Star*, 537 F.3d at 1366 ("the fact that information later found material was not disclosed cannot, by itself, satisfy the deceptive intent element of

---

[4]     While the present issue is whether Reggiani has pled—not proven—inequitable conduct, the showings necessary to prove inequitable conduct are relevant "at the pleading stage, albeit at a lower standard of plausibility." *See*, *e.g.*, *Prowess, Inc. v. Raysearch Labs., AB*, 953 F. Supp. 2d 638, 649 (D. Md. 2013) (internal citation omitted).

inequitable conduct"). The Federal Circuit tightened the standards for intent and materiality because it concluded that the doctrine had been "overused to the detriment of the public." *Therasense*, 649 F.3d at 1288-1290; *Exergen*, 575 F.3d at 1331 (noting that the district court "was correct not to draw any permissive inference of deceptive intent . . . lest inequitable conduct devolve into a magic incantation to be asserted against every patentee") (internal quotations omitted).

**B.    Defendants' Allegations Do Not State A Claim For Inequitable Conduct.**

**1.    The Allegations Fail To Particularize "Who" Deliberately Withheld Material Information From The PTO With Intent To Deceive.**

As an initial matter, Reggiani's inequitable conduct allegations fail to state "who" deliberately withheld material information from the PTO with the *specific* intent to deceive. With respect to the '138 Patent, Reggiani alleges the following, on information and belief:

> During prosecution of the application that led to the '138 patent, *persons associated with the filing and prosecution of that patent application*, including named inventors Ihor A. Lys, . . . Frederick M. Morgan, . . . *and/or* prosecution counsel, including Joseph Teja . . . withheld from the [PTO] at least PCT International Publication No. WO 99/31560 (the "WO 99/31560 publication").

(SAA at p. 40-41 ¶ 45, p. 43 ¶ 50) (emphasis added). With respect to the '559 Patent, Reggiani similarly alleges the following, on information and belief:

> During prosecution of the application that led to the '559 patent, *persons associated with the filing and prosecution of that patent application*, including named inventors Ajay Tripathi and Bernd Clauberg, *and/or* Signify in-house prosecution counsel, *including* Robert J. Kraus, withheld from the United States Patent Office at least U.S. Patent Application Publication No. US 2002/0176262 ("the US 2002/0176262 publication").

(*Id.* at p. 43 ¶ 51, p. 46 ¶ 54) (emphasis added). Reggiani also generally alleges that:

> [A]t least Signify's in-house counsel responsible for prosecuting the application that led to the '559 patent also intentionally withheld additional material references from the [PTO] during the prosecution of the application that issued as the '559 patent . . . [f]or example, *Signify* failed to accurately disclose to the [PTO] references raised by the European Patent Office against patentability in the

> prosecution of the European counterparts of the '559 patent, as well as references raised as novelty-destroying in the International Search Report for the International Application counterpart of the US 2002/0176262 publication, WO 02/096162 A1 . . .

(*Id.* at p. 46 ¶ 54) (emphasis added).

Fatally for Reggiani's counterclaim, vague allegations that "persons associated with the filing and prosecution" of the '138 and '559 Patents withheld the WO 99/31560 and US 2002/0176262 publications are insufficient. Pleadings that generally refer to a party, its agents and/or attorneys are patently insufficient. *See Exergen*, 575 F.3d at 1329 (pleading that referred generally to "Exergen, its agents and/or attorneys" failed to identify "who both knew of the material information and deliberately withheld or misrepresented it").

Although Reggiani "names names" when it alleges that such persons "includ[e] named inventors Ihor A. Lys, . . . Frederick M. Morgan, . . . *and/or* prosecution counsel, including Joseph Teja" (with respect to the '138 Patent) and "includ[e] named inventors Ajay Tripathi and Bernd Clauberg, and/or Signify in-house prosecution counsel, including Robert J. Kraus" (with respect to the '559 Patent), these "all-encompassing identification[s] of the entire universe of actors [are] precisely the type of overbroad allegation[s] that the *Exergen* court ruled insufficient as a matter of law." *Everlight Elecs. Co. v. Nichia Corp.*, 907 F. Supp. 2d 866, 872 (E.D. Mich. 2012) (allegations identifying "Yoshinori Shimzu, Kensho Sakano, Yasunobu Noguchi, Toshio Moriguchi, and/or other persons who were substantially involved in the preparation or prosecution of the application that led to the '925 Patent" were insufficient); *see also Mitsubishi Heavy Indus., LTD v. GE*, 2012 U.S. Dist. LEXIS 32314, at *4-7 (M.D. Fla. Mar. 12, 2012) (allegations that accused "the named inventors Kazunari Ide, Yoshoyuki Hayashi, and Masaaki Shibata, and/or the attorneys and agents substantively involved in the preparation or prosecution of the '185 patent" were insufficient as a matter of law); *Drew Techs. v. Robert Bosch, LLC*,

2014 U.S. Dist. LEXIS 18256, at *8 (E.D. Mich. Feb. 13, 2014) (allegations that "Michael Drew,

Brian Herron and/or their representatives" were inadequate). As stated in *Mitsubishi*:

> The double 'and/or' conjunction is too often used by lawyers trying to cover all bases. Its use often has unintended consequences . . . a strict application of the 'or' alternative of the double conjunction in this case results in an allegation that either the named inventors or some other individual or individuals engaged in deceptive conduct. The other individual or individuals, who remain unnamed, are perhaps the only ones to have engaged in the suspect behavior. Under this construction, GE certainly cannot be said to have made an allegation against a particular person.

2012 U.S. Dist. LEXIS 32314, at *5-6.

Thus, although Reggiani's amended pleading names some individuals, the use of the

"and/or" conjunction in combination with the sweeping allegations that "persons associated with

the filing and prosecution" of the '138 and '559 Patents withheld the publications with the intent

to deceive, suggests that Reggiani is unsure whether *any* of the individuals (or which one)

deliberately withheld material information, or whether it was in fact some other unnamed

"person[]" or "counsel" involved in prosecution of either patent. These allegations do not

"allege[] that any one of those individuals necessarily committed the particular act," nor do they

plead "any joint concert of action," and they are thus insufficient to identify who allegedly

committed the inequitable conduct. *See Drew Techs.*, 2014 U.S. Dist. LEXIS 18256, at *9.

Moreover, the allegations that "Signify failed to accurately disclose" various—and

unidentified—references during prosecution of the '559 Patent, as stated in paragraph 54 of the

SAA, are insufficient. The inclusion of entity names does not permit the court to reasonably infer

that any specific individual knew of the references and deliberately withheld them. *See Senju*

*Pharm. v. Apotex*, Inc., 921 F. Supp. 2d 297 (D. Del. 2013) (citing *Exergen*, 575 F.3d at 1329).

These overly inclusive allegations are insufficient under Rule 9(b), and the inequitable

conduct allegations should be dismissed on this basis alone.

## 2. The Allegations Fail To Particularize "Why" The Allegedly Withheld Information Is Material Or "How" A PTO Examiner Would Have Used The Information To Assess Patentability.

Even if Reggiani had pled "who" committed the inequitable conduct with the requisite particularity, the pleading also fails to state "why" the purportedly withheld information is material and "how" an examiner would have used it to assess patentability of the claims.

Reggiani alleges that specific figures and pages contained in the WO 99/31560 publication (attached hereto as Exhibit B) render anticipated or obvious Claim 1 of the '138 Patent, and that certain figures and pages contained in the US 2002/0176262 publication (attached hereto as Exhibit C) render anticipated or obvious Claim 11 of the '559 patent. (*See* SAA at p. 41-42 ¶ 47, p. 44 at ¶ 53.) The allegations in paragraphs 47 and 53 of the SAA misleadingly suggest that the cited portions from the WO 99/31560 publication (*i.e.* pages 30-34, Figures 6-14) and from the US 2002/0176262 publication (*i.e.* paragraphs [0016] – [0024], Figs. 2 and 3) state verbatim each of the limitations in Claim 1 of the '138 Patent and each of the limitations in Claim 11 of the '559 Patent. However, in reviewing these publications—which are incorporated by reference and integral to the SAA[5]—it is clear that the limitations in Claim 1 of the '138 Patent and in Claim 11 of the '559 Patent are <u>not</u> set forth in the cited pages or figures of either publication.

In other words, the referenced figures and descriptions thereof in the WO 99/31560 and US 2002/0176262 publications do not discuss *any* of the actual terms from the cited claims of the '138 Patent or the '559 Patent, respectively. Thus, the allegations do not set forth with the requisite specificity *why* the PTO would not have allowed Claim 1 of the '138 Patent had it been

---

[5] "The complaint is deemed to include any . . . documents incorporated in it by reference . . . [W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss . . ." *Int'l Audiotext Network v. AT&T Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (internal citations omitted).

aware of Figures 6-14 in the WO 99/31560 publication, and the discussion of those figures in that publication. Nor do the allegations state with specificity *why* the PTO would not have allowed Claim 11 of the '559 Patent had it been aware of Figures 2 and 3 in the US 2002/0176262 publication, and the discussion of those figures. *See Therasense*, 649 F.3d at 1291 (to show that withheld information is material, the allegations must show that "the PTO would not have allowed a claim had it been aware of the undisclosed prior art").

These pleading deficiencies are similar to those in *Lexington Luminance LLC v. Osram Sylvania Inc.*, 972 F. Supp. 2d 88 (D. Mass. 2013). In that case, the defendants asserted that the inventor of the patent-in-suit (the '851 Patent), had failed to disclose to the PTO another patent that he had co-authored (the '533 Patent), and that such nondisclosure was a material omission. *Id.* at 90-91. The alleged "material" information was a figure (Figure 6) within the '533 Patent, and the defendants claimed that this figure "anticipate[d] or render[ed] obvious Claims 1 and 5 of the '851 Patent because Figure 6 depicts a structure consisting of those claim terms, namely, a 'substrate' with a 'textured district' comprising a 'plurality of etched trenches,' a 'sloped etching profile' and several other characteristics." *Id.* at *92. However, other than "substrate," the '533 Patent "simply d[id] not discuss any of those anticipated or obvious claim terms, nor [were] those terms ever used in the '533 Patent to describe Figure 6 . . . Put simply, defendants ascribe a meaning to Figure 6 that the patentees themselves did not." *Id.* at 92-93; *Edge Sys. Ltd. Liab. Co. v. Aguila*, 2015 U.S. Dist. LEXIS 144830, at *8 (S.D. Fla. Oct. 26, 2015) (dismissing allegations that three named inventors failed to disclose prior art that they themselves authored for failure to allege how the prior art was material to patentability of the patent-in-suit).

The same is true here. None of the cited portions of the WO 99/31560 publication (*i.e.* pages 30-34, Figures 6-14) actually set forth the limitations of Claim 1 of the '138 Patent, or

describe Figures 6-14 using the terms set forth in Claim 1 of the '138 Patent. Nor do the cited portions of the US 2002/0176262 publication (*i.e.* paragraphs [0016] – [0024], Figs. 2 and 3) actually set forth the limitations contained in Claim 11 of the '559 Patent. Thus, like in *Lexington Luminance*, "defendants fail to demonstrate how the withheld information is 'material' because they have not shown how a patent examiner, armed with the withheld information, would have concluded that [the cited references] anticipate[] or render[] obvious [the Patents-in-Suit]." *Lexington*, 972 F. Supp. 2d at 92; *see also Exergen*, 575 F.3d at 1329-30 (allegations must describe how examiner "would have used [the reference] in assessing patentability"); *Int'l Test Sols., Inc. v. Mipox Int'l Corp.*, 2017 U.S. Dist. LEXIS 74640, at *8 (N.D. Cal. May 16, 2017) (dismissing pleading that failed to state "but-for materiality" of the withheld information).

Moreover, with respect to the WO 99/31560 publication, the *same* technical disclosure as the WO 99/31560 publication <u>*was in fact disclosed to the PTO*</u>. Indeed, Reggiani admits that "issued patents from the same family [as WO 99/31560] were disclosed in Information Disclosure Statements submitted by the Applicant" (SAA at p. 42 ¶ 48).[6] Despite this admission, Reggiani argues that such submitted references "were buried in over 400 other references cited, were published after the filing date of the '138 patent, were not 35 U.S.C. § 102(b) prior art, and thus would have been easily overlooked by the Examiner," based on unfounded speculation. *Id.* But, because the same technical disclosure as the WO 99/31560 publication was in fact disclosed to the PTO, the WO 99/31560 publication *cannot* form the basis of an inequitable conduct charge with respect to the '138 Patent. Indeed, a patent applicant's duty to disclose material information does not extend "to prior art already considered by or known to the patent examiner." *Medisim*

---

[6]     For example, US Patent No. 6,292,901, which is from the *same* family of patents as WO 99/31560, was cited during prosecution of the '138 Patent. A copy of the '901 Patent is attached as <u>Exhibit D</u>.

*Ltd. v. BestMed LLC*, 910 F. Supp. 2d 591, 611 (S.D.N.Y. 2012) (*citing Bristol-Myers Squibb Co. v. Rhone-Bristol- Myers Squibb Co.*, 326 F.3d 1226, 1235-36 (Fed. Cir. 2003)).

### 3. The Allegations Fail To State The Requisite State Of Mind.

Even if Reggiani had sufficiently identified "who" committed the inequitable conduct, "why" the withheld information is material, and "how" an examiner would have used the information in assessing the patentability of the claims in the '138 and '559 Patents, the pleading fails to set forth sufficient factual allegations from which it can reasonably be inferred: (1) that *any specific individual knew* that either the WO 99/31560 or the US 2002/0176262 publications were but-for material to the applications that led to the '138 and '559 patents, respectively, *and* (2) that such individual withheld the information *with specific intent to deceive the PTO*.

With respect to the '138 Patent, Reggiani alleges on information and belief that "persons involved with the prosecution of the '138 patent, including Color Kinetics founder Lys, CTO Morgan, and patent strategy and prosecution counsel Teja were aware of the WO 99/31560 publication at least because Messrs. Lys and Morgan are also named inventors on the WO 99/31560." (SAA at p. 42 ¶ 49.) Reggiani further alleges that the WO 99/31560 publication was cited in materials submitted in connection with at least three patent applications on which Lys "and/or" Morgan applied as named inventors, and which were prosecuted by Teja. (*Id.*)

At best, these allegations suggest that Lys, Morgan, "and/or" Teja knew of the existence of the WO 99/31560 publication, but these allegations do not "give rise to a reasonable inference of scienter." *Exergen*, 575 F.3d at 1330. Importantly, the allegations do not indicate that any particular person knew that the WO 99/31560 publication was *material* to the application that led to the '138 Patent, let alone but-for material. Even assuming the referenced portions of the WO 99/31560 publication would have been material to the application that led to the '138 Patent, simply pleading materiality (or even a high degree of materiality) is not enough. Reggiani "must

offer some additional factual allegations . . . 'indicat[ing] that the applicant appreciated the information's materiality.'" *Invista N. Am. S.A.R.L. v. M&G USA Corp.*, 2013 U.S. Dist. LEXIS 77685, at *39 (D. Del. Apr. 30, 2013) (quoting *Cancer Research Tech. Ltd. v. Barr Labs., Inc.*, 625 F.3d 724, 734 (Fed. Cir. 2010)); *Abaxis, Inc. v. Cepheid*, 2011 U.S. Dist. LEXIS 95589, at *17-18 (N.D. Cal. Aug. 25, 2011) (dismissing allegations showing that a prosecuting attorney was generally aware of an undisclosed patent because the "allegations as a whole fail[ed] to support the reasonable inference that he knew that specific information in the [undisclosed patent] was but-for material to the patents-in-suit"); *Polaris Indus. v. Arctic Cat Inc.*, 2015 U.S. Dist. LEXIS 102529, at *16 (D. Minn. Aug. 4, 2015) (dismissing allegations where the pleading did not indicate that the prosecuting attorney knew that an undisclosed patent was material); *Waters Indus. v. JJI Int'l, Inc.*, 2012 U.S. Dist. LEXIS 168549, at *16-17 (N.D. Ill. Nov. 28, 2012) (same); *Lexington*, 972 F. Supp. 2d at 92-93 (same).

In other words, "[m]erely being aware of a potentially material reference is insufficient to allege inequitable conduct." *Warner Chilcott Co., LLC v. Amneal Pharm., LLC*, 2013 U.S. Dist. LEXIS 177557, at *28 (D.N.J. Nov. 19, 2013); *cf. Delano Farms Co. v. Cal. Table Grape Comm'n*, 655 F.3d 1337, 1350 (Fed. Cir. 2011) (inequitable conduct allegations sufficiently pled where "[a] reasonable jury could infer that Dr. Ramming knew of the prior use, *appreciated that the prior use was material*, and decided not to disclose that information to the PTO, with deceptive intent") (emphasis added). At most, Reggiani's allegations suggest that Lys, Morgan, "and/or" Teja "should have known" that the referenced portions of the WO 99/31560 publication were allegedly material to the application that led to the '138 Patent. But allegations of negligence—even gross negligence—are insufficient for purposes of an inequitable conduct claim. *See Therasense*, 649 F.3d at 1290) ("that the applicant knew of a reference, should have

known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive"); *Vaughan Co. v. Glob. Bio-Fuels Tech., LLC*, 2013 U.S. Dist. LEXIS 152068, at *20 (N.D.N.Y. Oct. 23, 2013) ("conclusory allegations that the mere nondisclosure of information to the PTO suggests such was done with specific intent to deceive . . . is not enough").

The same is true for Reggiani's allegations concerning the '559 Patent, which allege on information and belief that "persons involved with the prosecution of the '559 Patent, including Mr. Tripathi, Mr. Clauberg, and/or Signify in-house prosecution counsel, including Mr. Kraus, were aware of the US 2002/0176262 publication, at least because it shares two inventors with the '559 Patent, namely Mr. Tripathi and Mr. Clauberg" and because it shares a similar background as the '559 Patent. (SAA at p. 45 ¶ 54.) But again, these allegations suggest only that Messrs. Tripathi "and/or" Clauberg "should have known" about US 2002/0176262 publication, not that any particular person actually knew the referenced portions were but-for material to the patentability of the '559 Patent and withheld them with the specific intent to deceive.

Moreover, the allegations "do not plausibly suggest any 'deliberate decision to withhold a known material reference.'" *Exergen*, 575 F.3d at 1331 (quoting *Molins*, 48 F.3d at 1181); *Edge Sys.*, 2015 U.S. Dist. LEXIS 144830, at *10 (dismissing inequitable conduct claim where the pleading was "devoid of any facts permitting an inference that there was an intent to deceive by any specific individual"). Reggiani alleges on information and belief that Lys, Morgan, "and/or" Teja "were involved in devising a patent strategy to broadly cover the LED retrofit market and to broaden and lengthen the patent coverage of Color Kinetics' original technology relating to LED lighting," in an apparent effort to set forth a basis from which to infer that Lys, Morgan, "and/or" Teja withheld the WO 99/31560 publication "with specific deceptive intent." (*See* SAA at p. 43 ¶ 50.) Reggiani more broadly avers on information and belief that "at the time of the filing and

prosecution of the patent application that led to the '559 Patent, Signify—then Philips Solid State Lighting Solutions—was also devising a patent strategy to cover the LED retrofit market." (SAA at p. 45-46 ¶ 54.)

But there are several deficiencies with this vague theory. First, this alleged conspiratorial motive is pled entirely on information and belief, and there are no *facts* stated from which this belief can be inferred. *See Exergen*, 575 F. 3d at 1330 (while pleading on "information and belief" is permitted under Rule 9(b), the pleading must set forth "the specific facts upon which the belief is reasonably based"). Second, these vague allegations suggest that Lys, Morgan, "and/or" Teja, and Signify generally, were motivated to deceive the PTO in an effort to benefit from issuance of the patent. "But virtually everyone involved in a patent's prosecution stands to benefit in some way from its issuance," and these sort of "ordinary economic circumstances" do not provide a basis to infer fraud. *Kranos IP Corp. v. Riddell, Inc.*, 334 F. Supp. 3d 907, 915-16 (N.D. Ill. 2018); *Invista*, 2013 U.S. Dist. LEXIS 77685, at *41-42 (allegations that the Applicant had a "desire to acquire patent rights in the gas barrier market" did not support an inference that the named individuals knowingly withheld material information because of a specific intent to deceive); *Research Corp. Techs. v. Microsoft Corp.*, 536 F.3d 1247, 1253 (Fed. Cir. 2008) ("any financial reward does not alone show an intent to deceive the USPTO").

Additionally, the allegation that the WO 99/31560 publication was cited in the prosecution of other patent applications by Lys and/or Morgan and which were prosecuted by Teja "during the pendency of the application that led to the '138 patent" (SAA at p. 42 ¶ 49) does not show that any specific person knew that the publication was material to the application that resulted in the '138 Patent. *See Exergen*, 575 F.3d at 1331 ("that an applicant disclosed a reference during prosecution of one application, but did not disclose it during prosecution of a

related application, is insufficient to meet the threshold level of deceptive intent required to support an allegation of inequitable conduct"). Moreover, such an allegation "would seem to undermine, rather than support, an inference of deceptive intent." *See Audionics Sys. v. AAMP of Fla., Inc.*, 2013 U.S. Dist. LEXIS 203021, at *20-21 (C.D. Cal. Nov. 19, 2013) (noting that a disclosure of the allegedly material information in another patent application would be "undeniably poor strategy"). And with respect to the '559 Patent, Reggiani alleges only that Signify was motivated to devise a patent strategy to cover the LED retrofit market, not that any particular person was motivated as such.

Thus, in addition to failing to plead the "who," "why", and "how" of inequitable conduct, the allegations also fail to set forth sufficient allegations concerning the intent to deceive.

## C. The Affirmative Defense Of Inequitable Conduct Should Be Stricken For The Same Reasons.

Just as a claim for inequitable conduct must satisfy the heightened pleading requirements of Rule 9(b), an affirmative defense alleging inequitable conduct must also be pled with particularity under Rule 9(b). *De Sesto v. Slaine*, 171 F. Supp. 3d 194, 205 (S.D.N.Y. 2016).

Reggiani's affirmative defense based on inequitable conduct is premised on the same allegations as the counterclaim. Thus, the inequitable conduct defense fails under Rule 9(b) for the same reasons, as the defense is not factually plausible and it is premised on a legally insufficient basis. *See GEOMC*, 918 F.3d at 98-99. Allowing the defense to proceed would needlessly expand discovery into ancillary matters concerning prosecution of the '138 and the '559 Patents, "diverting the court from genuine issues and simply spawning satellite litigation." *Multiform Desiccants, Inc. v. Medzam Ltd.*, 133 F.3d 1473, 1482 (Fed. Cir. 1998). Accordingly, Defendants' inequitable conduct defense should be stricken.

## II. Defendants' Patent Misuse Counterclaim Should Be Dismissed And The Affirmative Defense Should Be Stricken For Failure to State a Claim.

### A. Legal Standard For Pleading Patent Misuse.

Patent misuse is a narrow doctrine, which "'requires that the alleged infringer show that the patentee has impermissibly broadened the physical or temporal scope of the patent grant with anticompetitive effect.'" *Va. Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 868 (Fed. Cir. 1997) (quoting *Windsurfing Internationals v. AMF, Inc.* 782 F.2d 995, 1001 (Fed. Cir. 1986)); *see also Princo Corp. v. ITC*, 616 F.3d 1318, 1329 (Fed. Cir. 2010) (en banc).

"[P]atent misuse has been mainly a judicially created defense." *Princo*, 616 F.3d at 1326-1330 (summarizing the Supreme Court precedent from which the doctrine evolved). The "most common form of patent misuse" recognized by the courts is "requiring the purchase of an unpatented product as a condition for obtaining a license to the patent" (*i.e.* a tying arrangement). *Princo*, 616 F.3d at 1327; *see also id.* at 1327 (summarizing the "basic rule of patent misuse" as follows: "the patentee may exploit his patent but may not use it to acquire a monopoly not embraced in the patent") (internal citation omitted). The doctrine also extends to "licenses requiring the payment of licensing fees after the expiration of the licensed patent and thus having the effect of extending the life of the patent beyond the statutory period." *Id.* Such "'tying' arrangements . . . and arrangements in which a patentee effectively extends the term of its patent" are *per se* patent misuse. *See Va. Panel*, 133 F.3d at 869 (internal citations omitted).

Congress has also enumerated five categories of activities that *cannot* be deemed patent misuse, including *inter alia* where a patentee "licensed or authorized another to perform acts which if performed without his consent would constitute contributory infringement of the patent," and where a patentee "sought to enforce his patent rights against infringement or contributory infringement." 35 U.S.C. § 271(d).

When a practice alleged to constitute patent misuse is neither *per se* patent misuse nor specifically excluded from a misuse analysis by § 271(d)," then the court must engage in a multi-part analysis to determine whether the practice constitutes patent misuse:

> [First,] a court must determine if that practice is reasonably within the patent grant, *i.e.*, that it relates to subject matter within the scope of the patent claims. If so, the practice does not have the effect of broadening the scope of the patent claims and thus cannot constitute patent misuse. If, on the other hand, the practice has the effect of extending the patentee's statutory rights *and does so with an anti-competitive effect*, that practice must then be analyzed in accordance with the 'rule of reason.' Under the rule of reason, the finder of fact must decide whether the questioned practice imposes an unreasonable restraint on competition, taking into account a variety of factors, including specific information about the relevant business, its condition before and after the restraint was imposed, and the restraint's history, nature, and effect.

*Va. Panel*, 133 F.3d at 869 (internal citations omitted) (emphasis added).

The Federal Circuit has noted that "[t]he bringing of a lawsuit to enforce legal rights does not of itself constitute violation of the antitrust laws or patent misuse; there must be bad faith and improper purpose in bringing the suit, in implementation of an illegal restraint of trade." *Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.*, 45 F.3d 1550, 1558 (Fed. Cir. 1995). Following *Glaverbel*, the Federal Circuit rejected a jury instruction stating as follows:

> A patent is unenforceable for misuse if the patent owner attempts to exclude products from the marketplace which do not infringe the claims of the patent and the patent owner has actual knowledge that those products do not infringe any claim of the patents. The patent is also unenforceable for misuse when a patent owner attempts to use the patent to exclude competitors from their marketplace knowing that the patent was invalid or unenforceable.

*C.R. Bard, Inc. v. M3 Sys.*, 157 F.3d 1340, 1373 (Fed. Cir. 1998). It held that "'wrongful' enforcement of patents, is activity protected under *Noerr* and *California Motor*,[7] and is not

---

[7]     This is a reference to "sham" litigation under antitrust law. *See C.R. Bard, Inc. v. M3 Sys.*, 157 F.3d 1340, 1368 (Fed. Cir. 1998) ("Conduct prohibited under antitrust law includes bringing suit to enforce a patent with knowledge that the patent is invalid or not infringed, and the litigation is conducted for anti-competitive purposes. In such events the antitrust immunity of *Noerr-Pennington* and *California Motor Transp. Co. v. Trucking Unltd.*, 404 U.S. 508 (1972) does not apply to those who seek redress through judicial process.").

subject to collateral attack as a new ground of 'misuse.'" *Id.* It further stated that "[i]t is not patent misuse to bring suit to enforce patent rights not fraudulently obtained." *Id.*

**B.     Defendants' Allegations Do Not State a Claim for Patent Misuse.**

Reggiani accuses Signify of patent misuse on the basis that it allegedly "filed this lawsuit knowing that the asserted patents are likely invalid and/or that Reggiani's products could not possibly infringe them… ." (SAA at p. 39 ¶ 40, p. 38 ¶ 34 (alleging that Signify "coerce[s] licensing of the patents in suit and others . . . whether or not the patents are valid and whether or not the accused products are within the scope of the claims of the patents in suit")). However, allegations of "wrongful" enforcement of a patent—*i.e.* attempting to exclude products from the market that are known to be non-infringing or attempting to exclude competitors knowing the patent is invalid or unenforceable—cannot form the basis of a patent misuse claim. *See C.R. Bard*, 157 F.3d at 1373; *see also* 35 U.S.C. § 271(d)(3).

For example, in *Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*, 2006 U.S. Dist. LEXIS 83823 (S.D.N.Y. Nov. 16, 2006), this Court applied *C.R. Bard* to dismiss a claim for patent misuse that was based upon allegations that the patentee's enforcement efforts constituted misuse because the patentee "is aware that either the '773 patent is invalid or [that the accused infringer's] product does not infringe it." *Id.* at *8. The Court noted that the purpose of the patent misuse defense "is to prevent a patentee from using its patent to gain a competitive advantage beyond that which the patent rightfully confers, not to bar actions enforcing a patent against allegedly infringing products." *Id.* at *9; *Gust, Inc. v. AlphaCap Ventures, LLC*, 2016 U.S. Dist. LEXIS 98869, at *14 (S.D.N.Y. July 28, 2016) (dismissing patent misuse based on assertedly baseless infringement claims because the allegations "fail[ed] to state any benefit that [the patentee] has sought or gained beyond that which naturally accrues to its possession of patents"). Thus, Reggiani's patent misuse claim is not cognizable because it is based on similar

allegations that Signify brought this suit despite allegedly "knowing that the asserted patents are likely invalid and/or that Reggiani's products could not possibly infringe them." (SAA at p. 39 ¶ 40, p. 38 ¶ 34.). Such bald assertions do not state any benefit sought or gained by Signify beyond those naturally accruing to a patent owner or allege any anticompetitive effect.

In its most recent answer, Reggiani attempted to rectify the deficiencies in its patent misuse claim by incorporating the inequitable conduct claim and alleging that Signify "filed [this lawsuit] in bad faith and with an improper purpose of stifling competition in the market." (SAA at p. 39 ¶ 40.) But these additions do not save the day. While *C.R. Bard* suggested that bringing suit to enforce patent rights that were "fraudulently obtained" *might* constitute patent misuse, *see* 157 F.3d at 1373, allegations of patent misuse that depend upon allegations of inequitable conduct should be dismissed where the inequitable conduct allegations are themselves insufficient. *See ESCO Corp. v. Cashman Equip. Co.*, 158 F. Supp. 3d 1051, 1069 (D. Nev. 2016) (dismissing patent misuse allegations where inequitable conduct allegations insufficient); *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 2017 U.S. Dist. LEXIS 41095, at *44-45 (N.D. Ill. Mar. 22, 2017) (given that the "inequitable conduct counterclaim is insufficiently pleaded, so too is the patent misuse claim to the extent that it relies on inequitable conduct"). Because Reggiani failed to plead inequitable conduct with respect to the '138 and '559 Patents, the patent misuse claim should also be dismissed to the extent it relies upon those allegations.

Some district courts have read *Glaverbel* to allow a patent misuse defense to be premised on alleged baseless enforcement of a patent so long as the facts pled "support a reasonable inference that [the patentee] (1) [acted with] bad faith and improper purpose in bringing the suit, and (2) impermissibly broadened the scope of the patent grant with anticompetitive effect." *See*, *e.g.*, *Nalco Co. v. Turner Designs, Inc.*, 2014 U.S. Dist. LEXIS 21362, at *36 (N.D. Cal. Feb. 19,

2014); *see also id.* at *35 n. 4. But these cases ignore the Federal Circuit's directive in *C.R. Bard* that "wrongful" enforcement of a patent—*i.e.* enforcing a patent known to be invalid or against products known not to infringe—does not constitute patent misuse. *See C.R. Bard*, 157 F.3d at 1373; *Pace Int'l, LLC v. Indus. Ventilation, Inc.*, 2009 U.S. Dist. LEXIS 73847, at *4 (W.D. Wash. Aug. 6, 2009) (dismissing "bad faith" allegations that patentee was attempting to enforce the patents against goods known not to be infringing based on *C.R. Bard*); *IMX, Inc. v. E-Loan, Inc.*, 748 F. Supp. 2d 1354, 1358 (S.D. Fla. 2010) (patent misuse or unclean hands claims and defenses that were based on allegations that the patentee had "threatened litigation with regard to an invention that is not embodied in their patent" were barred by 35 U.S.C. 271(d)(3)).

Even if this Court were to follow *Nalco* and other cases allowing patent misuse to encompass "bad faith" enforcement of a patent—which it should not based on 35 U.S.C. 271(d)(3) and *C.R. Bard*—the allegations here are insufficient to support that Signify: (1) acted in bad faith and with an improper purpose in bringing this patent infringement action, and (2) that doing so broadened the scope of the patent grant with anticompetitive effect.

The allegations that Signify has brought suit against various lighting fixture manufacturers to enforce its patents—including this action—and that various suits have ended in settlements, is undeniably excluded from patent misuse under 35 U.S.C. 271(d)(3). (*See* SAA at p. 38 ¶ 35.) And the fact that Signify licenses its products to others, also expressly does not constitute patent misuse under 35 U.S.C. 271(d)(2). (*See* SAA at p. 39 ¶ 38.) These practices are thus "reasonably within the patent grant." *Va. Panel*, 133 F.3d at 869.

While Reggiani alleges that some of the patents listed on Signify's website are expired, there are no allegations that Signify has actually attempted to enforce an expired patent (because it has not done so) or that any of the Patents-in-Suit are expired. (*See* SAA at p. 39 ¶ 39.)

Moreover, the allegations that some "foreign counterparts of the [sic] some of the patents in suit have been revoked, withdrawn or allowed only with much more limited claims by the European Patent Office," (SAA at p. 39 ¶ 39), there are no allegations that any of the Patents-in-Suit have actually been revoked, withdrawn, or limited. In fact, just the opposite is true—*none* of the Patents-in-Suit have ever been held invalid in any district court, PTO, or ITC proceeding, and the '559 Patent and the parent patent to the '138 Patent have won validity challenges in a recent ITC proceeding. *In re Certain LED Lighting Devices,* Inv. No. 337-TA-1081, Initial Determination on Violation of Section 337 (Dec. 19, 2018). Reggiani's allegations are also primarily made on information and belief, but Reggiani does not set forth any factual information on which it purports to base its "information and belief." For example, there are absolutely no facts alleged from which to base its "belief" that Signify's 900 licenses "were acquired mainly through cease and desist letters threatening litigation." (*See* SAA at p. 39 ¶ 38.)

Reggiani also has not pled that bringing this patent infringement action impermissibly broadened the scope of the patent grant with anticompetitive effect. "[P]atent misuse requires a showing that the patentee's conduct had anti-competitive effects . . . 'in an appropriately defined relevant market.'" *Princo*, 616 F.3d at 1334 (quoting *Windsurfing*, 782 F.2d at 1001-02); *Seaboard Int'l, Inc. v. Cameron Int'l Corp.*, 2013 U.S. Dist. LEXIS 106784, at *8 (E.D. Cal. July 30, 2013) (dismissing patent misuse allegations for failure to sufficiently allege anticompetitive effects). Reggiani alleges generically that Signify is a "multinational company, with billions in revenue from the lighting industry" (SAA at p. 37 ¶ 33), but it fails to allege the relevant market, Signify's monopoly power within that market, or anticompetitive effects of the alleged practices within the relevant market. *See Takeda Chem. Indus. v. Alphapharm Pty., Ltd.*, 2004 U.S. Dist. LEXIS 16584, at *5 (S.D.N.Y. Aug. 19, 2004) ("Conclusory references to an 'anti-competitive

effect' and 'improper restraint on competition' contained in the defendants' pleadings are not sufficient to give [the patentee] notice of the misconduct alleged."); *see also Chamberlain*, 2017 U.S. Dist. LEXIS 41095, at \*42, \*45 (dismissing patent misuse claim that relied upon antitrust allegations because the defendant "failed to identify any facts from which the court can infer . . . sufficient market power to have been able to create a monopoly") (internal citation omitted).

While Reggiani describes Signify's licensing program as "aggressive" and "coerc[ive]," and suggests—on information and belief and without basis—that the royalties are not reasonable, (SAA at p. 38 ¶ 34, 37), these sorts of allegations do not constitute patent misuse. *See Princo*, 616 F.3d at 1329 ("the defense of patent misuse is not available to a presumptive infringer simply because a patentee engages in some kind of wrongful commercial conduct, even conduct that may have anticompetitive effects"). Moreover, the "'misuse must be of the patent in suit.'" *Id.* at 1329 (quoting *Kolene Corp. v. Motor City Metal Treating, Inc.*, 440 F.2d 77, 84-85 (6th Cir. 1971)). Reggiani's allegations regarding Signify's licensing program generally (rather than licensing of the Patents-in-Suit) cannot support the patent misuse claim.

Accordingly, Reggiani's patent misuse counterclaim should be dismissed.

## C. The Affirmative Defense For "Patent Misuse And Unclean Hands" Should Be Stricken For The Same Reasons.

Reggiani's fifth affirmative defense for "Patent Misuse and Unclean Hands" is pled in a single, conclusory sentence. (*See* SAA at p. 21.) Even if this defense were construed as incorporating by reference the allegations set forth in the counterclaim for patent misuse (which it does not), this defense should be stricken as it is not factually plausible and is premised on a legally insufficient basis. *See GEOMC*, 918 F.3d at 98-99. Allowing the defense to proceed would also greatly expand discovery and needlessly increase the time and expense of the litigation. *See Specialty Minerals, Inc. v. Pluess-Staufer AG*, 395 F. Supp. 2d 109, 111-112

(S.D.N.Y. 2005) (holding that plaintiffs would be prejudiced because inclusion of an unclean hands defense would require additional discovery and would expand the length and scope of the trial). Accordingly, Reggiani's defense of patent misuse and unclean hands should be stricken.

## CONCLUSION

For the reasons stated herein, Signify respectfully requests that the Court issue an Order: (1) dismissing, with prejudice, Defendants' third counterclaim alleging patent misuse and fourth counterclaim alleging inequitable conduct; (2) striking Defendants' fifth affirmative defense for patent misuse and unclean hands and tenth affirmative defense for inequitable conduct; and (3) granting any other relief as the Court deems just and proper.

Dated: June 24, 2019

Respectfully submitted,

BOND, SCHOENECK & KING, PLLC

*s/ Jeremy P. Oczek*

Jeremy P. Oczek (JO1975)
200 Delaware Avenue
Buffalo, New York 14202
Telephone: (716) 416-7000
Email: jpoczek@bsk.com

**COUNSEL FOR PLAINTIFFS**
**Signify North America Corporation and**
**Signify Holding B.V.**

## CERTIFICATE OF SERVICE

I certify that all counsel of record, who are deemed to have consented to electronic service are being served June 24, 2019, with a copy of this document via the CM/ECF system.

/s/ *Jeremy P. Oczek*
Jeremy P. Oczek